**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

VIJAYINDRAA GAUTAM GAIKWAD,    )
                                )
            Plaintiff,          )
                                )
    v.                          )    Civil Action No. 26-625-CFC-SRF
                                )
TECH MAHINDRA AMERICAS INC. and )
RICHARD LOBO,                   )
                                )
            Defendants.         )

## REPORT AND RECOMMENDATION

Plaintiff Vijayindraa Gautam Gaikwad ("Plaintiff") filed this action on May 29, 2026, asserting a claim of employment discrimination and retaliation against his former employer, Tech Mahindra Americas Inc. ("Tech Mahindra"), and Richard Lobo, Chief People Officer for Tech Mahindra ("Lobo;" together with Tech Mahindra, "Defendants"). (D.I. 2)  Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5)  The court proceeds to review and screen the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (D.I. 7)  For the reasons set forth below, I recommend that service proceed on Plaintiff's Title VII employment discrimination claim against Tech Mahindra.  I recommend that the court DISMISS Plaintiff's retaliation claim against Tech Mahindra WITHOUT PREJUDICE and DISMISS all other claims in the amended complaint WITH PREJUDICE.  I further recommend that the court DENY Plaintiff's emergency motion for a preliminary injunction, (D.I. 9), and terminate as moot Plaintiff's motion to expedite issuance of a service order, (D.I. 12).

## I.    BACKGROUND

Plaintiff began working for Tech Mahindra in India on December 22, 2021.  (D.I. 7 at 1)

In February of 2024, he was nominated for a position serving Tech Mahindra's client, Amtrak, in

the United States.  (*Id.*)  According to Plaintiff, Tech Mahindra falsified information on a Labor

Conditions Application associated with Plaintiff's H-1B visa application by indicating that

Plaintiff would be working on a project for Integris Health in Oklahoma.  (*Id.*)  Tech Mahindra

sent Plaintiff to Oklahoma on May 2, 2025 to begin working on the Amtrak project, despite the

fact that Amtrak has no physical presence in Oklahoma.  (*Id.* at 1-3)

In July of 2025, Tech Mahindra filed an amended petition requesting leave for Plaintiff to

relocate to Delaware to continue working on the Amtrak project.  (*Id.* at 3)  Plaintiff arrived in

Delaware on August 3, 2025.  (*Id.*)  A U.S. Citizenship and Immigration Services ("USCIS")

officer completed Plaintiff's H-1B visa verification in Delaware in November of 2025.  (*Id.*)

In January of 2026, Tech Mahindra removed Plaintiff from the Amtrak project for an

alleged visa compliance violation and ordered him to return to India by February 27, 2026.  (*Id.*

at 3-4)  Plaintiff resigned from Tech Mahindra on February 27, 2026.  (*Id.* at 4)  On March 2,

2026, Tech Mahindra allegedly created false documentation withdrawing Plaintiff's resignation

and then terminated Plaintiff's employment.  (*Id.*)  Plaintiff's health insurance was terminated

along with his employment, and Tech Mahindra did not activate or process Plaintiff's COBRA

coverage election even though he made his premium payments.  (*Id.* at 9-10)  On April 22, 2026,

Plaintiff requested that the COBRA administrator cancel the policy and issue a full refund, and

the request was ultimately granted.  (*Id.* at 10)

During the course of his employment in the United States, Plaintiff alleges that he

suffered from various forms of discrimination.  In May of 2025, Plaintiff alleges that his

2

supervisor, Narayanan Sundararajan, asked him about his caste after witnessing Plaintiff eat a piece of pizza with meat on it and then stated Plaintiff was not worthy of his position with Tech Mahindra because of his low caste. (*Id.* at 4-5) Sundararajan also criticized Plaintiff's work performance, credited others for Plaintiff's work, and avoided proximity to Plaintiff due to Plaintiff's status as an "untouchable." (*Id.* at 5) Based on Sundararajan's complaints, Plaintiff's reporting manager, Vishwas Srinivas, issued multiple warnings to Plaintiff and threatened to return Plaintiff to India if his performance did not improve. (*Id.*) According to Plaintiff, these reports contradicted Amtrak's positive feedback regarding Plaintiff's performance. (*Id.*)

The amended complaint alleges that Madhuri Varanasi, a female employee belonging to a higher caste, received preferential treatment despite being less qualified for her position based on her performance and experience. (*Id.* at 6) Varanasi committed the same visa violation that Plaintiff was accused of committing, yet she was not ordered to return to India or otherwise accused of wrongdoing. (*Id.*)

In January of 2026, Amtrak assigned Plaintiff to investigate an incident report that was not resolved in compliance with Tech Mahindra's contract with Amtrak (*Id.*) Plaintiff's investigation revealed that a Tech Mahindra employee had failed to resolve a maintenance ticket before the expiration period and closed the ticket without resolving the issue to avoid paying penalties under the contract. (*Id.*) Although Sundararajan instructed Plaintiff to hide his findings from Amtrak's director, Linda Sten, Plaintiff forwarded Sten his investigative report on January 12, 2026. (*Id.* at 7) Sundararajan directed another Tech Mahindra employee to take remote control of Plaintiff's laptop to recall the email, which Sten had already received. (*Id.*) Plaintiff was subsequently barred from engaging in any direct client contact with Amtrak.

3

The amended complaint alleges that Plaintiff asked Richard Lobo, Tech Mahindra's Chief People Officer, to intervene on his behalf when British Airways informed him that his wife could not return to India with him due to the late stage and high risk nature of her pregnancy. (*Id.* at 9)  Lobo responded that Plaintiff should not have disclosed his wife's pregnancy status to the airline and maintained that Plaintiff was still required to return to India.  (*Id.*)

Plaintiff asserts claims for employment discrimination and retaliation under Title VII, 42 U.S.C. §§ 2000e *et seq.*  He obtained a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") on May 7, 2026.  (D.I. 7, Ex. 1)  Plaintiff also appears to allege causes of action for fraud-based claims under federal criminal statutes, as well as potential state law tort claims.[1]

## II.    LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).  The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Because Plaintiff

---

[1] Plaintiff's original complaint identified causes of action for false statements under 18 U.S.C. § 1001, visa fraud under 18 U.S.C. § 1546, negligence, intentional infliction, and "willful & wanton conduct." (D.I. 2 at 3)  Although Plaintiff does not expressly reassert these causes of action by name in the amended pleading, Plaintiff's factual allegations suggest that he did not intend to abandon these causes of action in his amended complaint.

4

proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), a court may dismiss a complaint as frivolous if it depends on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Dooley*, 957 F.3d at 374 (internal citations and quotation marks omitted).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d

5

Cir. 2014) (internal quotation marks omitted). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.    DISCUSSION

### A. Criminal and/or Immigration Statutes

The amended complaint appears to assert claims against Tech Mahindra for violations of federal immigration and/or criminal statutes. These allegations are "based on an indisputably meritless legal theory[.]" *LoCurto v. NYU Langone Lutheran Hosp.*, 758 F. Supp. 3d 31, 36-37 (E.D.N.Y. 2024) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)). To the extent that Plaintiff attempts to bring causes of action for false statements under 18 U.S.C. § 1001 or visa fraud under 18 U.S.C. § 1546, there is no private right of action under these criminal statutes. *Id.*; *see Allen v. Admin. Office of Pa. Courts*, 270 F. App'x 149, 150 (3d Cir. 2008) (concluding that a plaintiff who sought to impose criminal liability on state defendants

6

lacked standing to proceed). Likewise, there is no private right of action to enforce the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, or to collect damages for immigration fraud. *See Smith v. Smith*, 2020 WL 5626982, at *2 (D.N.J. Aug. 18, 2020). Therefore, I recommend that the court DISMISS with prejudice Plaintiff's claims brought under federal criminal or immigration statutes pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i). *See Wemh v. Newport Police Dep't*, C.A. No. 21-1730-MN, 2022 WL 1046264, at *2 (D. Del. Apr. 7, 2022).

## B. Claim(s) against Lobo

Although the amended complaint names Lobo as a defendant, it is unclear what causes of action are asserted against him. Plaintiff appears to advance a claim sounding in tort against Lobo, describing Lobo's failure to intercede on behalf of Plaintiff and his wife following their communications with a third-party commercial airline under a heading entitled "Intentionally End[a]ngering Pregnant Woman and Unborn Child." (D.I. 7 at 9) The court cannot independently ascertain which tort this incident implicates. Because Plaintiff's amended complaint does not plausibly state a tort-based claim against Lobo, I recommend that the court DISMISS any such claim against Lobo without prejudice.

To the extent that Plaintiff raises Title VII claims against Lobo, those claims are futile because it is well-established that individual employees cannot be held liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996). I recommend that the court DISMISS WITH PREJUDICE any Title VII claims against Lobo pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## C. Employment Discrimination

The amended complaint alleges that Tech Mahindra discriminated against Plaintiff based on his religious caste, race, color, and gender.[2] (D.I. 7 at 2)  Title VII prohibits discriminatory employment practices based upon an individual's "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e–2.  A plaintiff alleging a Title VII claim for discriminatory termination must establish that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated individuals who were not members of the protected class were treated more favorably or the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

At this stage of the proceeding, Plaintiff plausibly alleges a claim under Title VII for employment discrimination.  Specifically, Plaintiff alleges that: (1) he is a male[3] belonging to the Hindu Mahar caste, which is the lowest in India's hierarchical caste system, (D.I. 7 at 4); (2) he was nominated to work for Amtrak in the U.S. based on his exemplary performance, (*id.* at 1); (3) he was terminated from his employment, (*id.* at 4); and (4) Plaintiff's supervisor, Sundararajan, critiqued Plaintiff's work performance and his alleged unworthiness for the position due to his low caste, (*id.* at 5).  The amended complaint also identifies Varanasi as a

---

[2] Plaintiff's employment discrimination claim is not preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.*  *See Hukman v. Am. Airlines, Inc.*, 796 F. App'x 135, 141 n.4 (3d Cir. 2019) ("The RLA does not preclude the litigation of Title VII rights merely because [the carrier] had policies in place pursuant to a [collective bargaining agreement].");　*see also Fitzgerald v. Nat'l Railroad Passenger Corp. (Amtrak)*, 2024 WL 771711 (3d Cir. Feb. 26, 2024).

[3] In the Third Circuit, a Title VII claim for gender discrimination brought by a male is generally characterized as a claim for reverse discrimination.  *See Medcalf v. Trustees of Univ. of Pa.*, 71 F. App'x 924, 927 (3d Cir. 2003).

similarly situated female employee belonging to the Brahmin caste who received preferential treatment. (*Id.* at 6, 8)

## D. Retaliation

Plaintiff also alleges that Tech Mahindra terminated him in retaliation for his disclosure of Tech Mahindra's purported fraud against Amtrak. (D.I. 7 at 6-8) The legal basis for Plaintiff's retaliation claim is not clear from the pleaded allegations in the amended complaint. Under a liberal construction of the amended pleading, the court addresses Plaintiff's retaliation claim under Title VII, the Federal Rail Safety Act, and the False Claims Act.

### 1. Title VII

To the extent that Plaintiff intends to assert a retaliation claim under Title VII based on his report to Sten, the claim is not plausible and dismissal is warranted because "Title VII's anti-retaliation provisions protect employees who oppose employment practices made illegal by Title VII." *Brangman v. AstraZeneca, LP*, 952 F. Supp. 2d 710, 721 (E.D. Pa. 2013) (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 134-35 (3d Cir. 2006)). Plaintiff's whistleblower report to Amtrak about Tech Mahindra's failure to process website maintenance tickets does not satisfy this requirement.[4]

---

[4] Plaintiff also alleges that he verbally complained to an employee in Tech Mahindra's human resources department about Sundararajan's discriminatory behavior. (D.I. 7 at 7-8) Although this complaint could be construed as protected activity in support of a Title VII retaliation claim, the amended complaint does not identify any adverse action taken specifically in response to Plaintiff's verbal complaint to human resources. *See Holland v. NTP Marble, Inc.*, 2018 WL 10847112, at *4 (E.D. Pa. Feb. 7, 2018) (dismissing retaliation claim where the plaintiff failed to allege facts demonstrating adverse action taken in retaliation for making a report of harassment). Plaintiff's suggestion that the investigation of his complaint was deficient is likewise not enough to constitute an adverse action. *See id.* ("[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." (internal citations and quotation marks omitted)).

## 2. Federal Rail Safety Act

The Federal Rail Safety Act ("FRSA") contemplates whistleblower retaliation complaints by railroad carrier employees, contractors, or subcontractors. 49 U.S.C. § 20109(a); *see Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 156-57 (3d Cir. 2013). Under the FRSA, a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part" to the employee's engagement in one or more statutorily enumerated protected activities. *Id.* The employee must show that (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Araujo*, 708 F.3d at 157.

The amended complaint does not plausibly allege that Plaintiff engaged in a protected activity as enumerated in the FRSA. Protected activities under the FRSA include informing a supervisor of a violation of a federal law, rule, or regulation relating to railroad safety or security. 49 U.S.C. § 20109(a)(1)(C). Here, the amended complaint alleges that Amtrak's vice president created a ticket for website maintenance after he could not apply employees' leave periods on Amtrak's portal. (D.I. 7 at 6) A Tech Mahindra employee was tasked with completing the maintenance ticket within a certain period but failed to do so. Instead, the employee closed the ticket and indicated the issue was resolved even though the website maintenance was not completed. (*Id.*) Plaintiff investigated the incident and reported the deception to Sten. (*Id.* at 6-7) Plaintiff's report regarding a coworker's failure to complete timely website maintenance to correct issues with the entry of employees' leave periods is not protected activity under the FRSA because it does not relate to railroad safety or security. *See*

10

*Rossi v. Nat'l Railroad Passenger Corp.*, 2016 WL 2609790, at *3 (E.D. Pa. May 6, 2016) (finding no protected activity under the FRSA where employee's complaint pertained to a coworker's usurpation of overtime).

### 3. False Claims Act

Plaintiff's motion for preliminary injunction suggests that Plaintiff brings a claim for retaliation under the False Claims Act ("FCA"). (D.I. 9 at 11); *see* 31 U.S.C. § 3730(h). The FCA prohibits the submission of a false or fraudulent claim for payment to the federal government. 31 U.S.C. § 3729(a). The statute allows a private individual to bring a *qui tam* action in the name of the government (or in this case, a federal grantee such as Amtrak) to advance the FCA's purpose of recovering losses incurred from fraudulent claims for payment. *U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 545-46 (D.C. Cir. 2002). Section 3730(h) of the FCA also protects employees from retaliatory discharge for blowing the whistle on the fraudulent conduct of their employer. 31 U.S.C. § 3730(h).

To state a claim for retaliation under the FCA, a plaintiff must show that (1) he engaged in protected conduct, and (2) he suffered discrimination because he engaged in protected conduct. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001). Under the statute, protected conduct includes either lawful acts in furtherance of a *qui tam* action under the FCA or "other efforts" to stop one or more FCA violations. *U.S. ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 191 (3d Cir. 2022). The amended complaint does not allege that Plaintiff put Tech Mahindra on notice of an actual or potential *qui tam* action for a viable FCA claim. Therefore, the court addresses whether the amended complaint plausibly identifies protected conduct under the "other efforts" prong.

11

Although the Third Circuit has not yet adopted a clear test for application of the "other efforts" prong, cases within the Third Circuit generally analyze whether the plaintiff's conduct is "based on an 'objectively reasonable' belief that the employer has committed or is about to commit an FCA violation." *Christian v. Omnis Glob. Techs., LLC*, 2025 WL 1921650, at *4 (E.D. Pa. July 10, 2025) (citing *Singletary v. Howard Univ.*, 939 F.3d 287, 296 (D.C. Cir. 2019)). In this vein, the pleading "must cite specific violations of statutory, regulatory, or contractual requirements," and advancing an "unclear theory of FCA retaliation ... without any factual averments to support it" is insufficient. *Id.* (quoting *Smith v. Ideal Concepts, Inc.*, 2023 WL 8188446, at *4 (E.D. Pa. Nov. 27, 2023)).

The amended complaint identifies two categories of alleged fraud by Tech Mahindra. First, Plaintiff alleges that Tech Mahindra misled USCIS during the visa application process to bill Amtrak larger sums for Plaintiff's services than the company would be able to bill if Plaintiff remained in India. (D.I. 7 at 3, 9-10) The exact nature of the alleged fraud in the visa applications is not clear from the amended complaint, as Plaintiff generally alleges that Tech Mahindra had "an established pattern and practice of providing false information on its H1B, L1A and L1B petitions" for improper financial gain.[5] (*Id.* at 4) These averments are not sufficiently clear to support a claim for retaliation under the FCA, and Plaintiff does not identify an express law, rule, or regulation that would apply to the alleged misconduct, nor does he

---

[5] A plaintiff alleging retaliation under the FCA is not required to demonstrate actual proof of an FCA violation. *See United States v. Novartis Pharms. Corp.*, 2020 WL 1891188, at *2 (D.N.J. Apr. 16, 2020). However, multiple Courts of Appeal have rejected the viability of FCA claims based on allegedly fraudulent visa applications. *See, e.g.*, *U.S. ex rel. Billington v. HCL Techs. Ltd.*, 126 F.4th 799 (2d Cir. 2025); *U.S. ex rel. Kini v. Tata Consultancy Servs. Ltd.*, 146 F.4th 1184 (D.C. Cir. 2025); *U.S. ex rel. Palmer v. Tata Consulting Servs., Ltd.*, 174 F.4th 462 (5th Cir. 2026).

12

identify a nexus between Tech Mahindra's misconduct and a potential violation of the FCA. *See Smith*, 2023 WL 8188446, at *4.

Plaintiff also alleges that Tech Mahindra defrauded Amtrak by failing to address website maintenance tickets in a timely manner and then falsely representing that the tickets were resolved to avoid incurring contractual penalties owed to Amtrak. (D.I. 7 at 6-7) Again, the amended complaint fails to "cite specific violations of statutory, regulatory, or contractual requirements" as required to state a claim for retaliation under the FCA, nor does it clearly articulate a nexus between Tech Mahindra's conduct and a potential FCA violation. *See Christian*, 2025 WL 1921650, at *4.

Moreover, the amended complaint does not include factual allegations sufficient to satisfy the notice requirements for an FCA retaliation claim. To meet the notice requirement, a plaintiff must generally allege that he acted outside his normal job responsibilities or notified a party outside the usual chain of command. *See Bland-Collins v. Howard Univ.*, 19 F. Supp. 3d 252, 257-58 (D.D.C. 2014) (citing *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004)). Here, the amended complaint alleges that Plaintiff investigated Tech Mahindra's maintenance ticket processing in accordance with the express instructions of his reporting manager at Amtrak, and he reported the results of his investigation to his Tech Mahindra supervisor and the reporting manager at Amtrak. (D.I. 7 at 6-7) These facts do not plausibly support an inference that Plaintiff acted outside the scope of his normal job duties or reported his findings beyond the usual chain of command in a manner that would notify Tech Mahindra he was engaged in protected activity. *See U.S. ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 767 (10th Cir. 2019).

For the foregoing reasons, the amended complaint fails to state a plausible claim for retaliation under Title VII, the FRSA, and/or the FCA. Consequently, I recommend that the court DISMISS Plaintiff's retaliation claim without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### E.  Plaintiff's Pending Motions

Plaintiff filed a motion for a preliminary injunction seeking reinstatement to his former position at Tech Mahindra, with a corresponding reinstatement of his salary and benefits and restoration of his H-1B visa. (D.I. 9 at 1) In the alternative, Plaintiff seeks payment in the amount of $12,500 per month until a final judgment is entered in this action. (*Id.*) Plaintiff also filed a motion to expedite the issuance of a service order in this civil action. (D.I. 12) Both motions focus on Plaintiff's loss of immigration status and the financial hardship caused by his termination, particularly in the context of the late stage and high-risk nature of his wife's pregnancy.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In awarding preliminary injunctions, courts determine if a plaintiff is likely to succeed on the merits—along with the risk of irreparable harm, the balance of equities, and the public interest." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (emphasis omitted). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury[ ] must necessarily result in the denial of a preliminary injunction." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982).

I recommend that the court DENY Plaintiff's motion for a preliminary injunction because Plaintiff has failed to show he will suffer irreparable harm in the absence of the requested injunctive relief. *See Airbus SAS v. Anaconda Inc.*, C.A. No. 25-178-CFC, 2026 WL 115005, at

14

*2 (D. Del. Jan. 15, 2026) (denying motion for preliminary injunction based on failure to satisfy irreparable harm requirement without reaching other elements).  Plaintiff cites the following categories of irreparable harm in support of the pending motion: (1) loss of immigration status, (2) loss of health insurance during his wife's high-risk pregnancy, (3) Plaintiff's mental health diagnosis, (4) the risk of imminent homelessness with a newborn, (5) damage to Plaintiff's credit, and (6) reputational harm.  (D.I. 9 at 12-13)  Each of these categories stems directly from Plaintiff's loss of his job.  However, a loss of employment and the associated hardships do not typically constitute irreparable harm because the job loss can be remedied after trial in the form of reinstatement, back pay, and/or an award of other damages.  *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); *Marxe v. Jackson,* 833 F.2d 1121 (3d Cir. 1987) (vacating a preliminary injunction reinstating a Title VII plaintiff to her former position).

"[A] discharge from employment with all of its attendant difficulties is not irreparable injury[.]" *Moteles v. Univ. of Pa.*, 730 F.2d 913, 919 (3d Cir. 1984).  Plaintiff emphasizes his financial struggles, but "an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson*, 415 U.S. at 92 n.68.  Living expenses, including the cost of housing and health insurance, can be compensated with monetary damages and therefore fail to satisfy the irreparable injury requirement.  *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000).

Although Plaintiff's loss of immigration status is not a financial injury, it is a past injury that occurred months before Plaintiff moved for a preliminary injunction.  The amended complaint alleges that Tech Mahindra ordered Plaintiff to return to India by February 27, 2026

15

due to an alleged visa compliance violation. (D.I. 7 at 3) In his motion for a preliminary injunction, Plaintiff contends that his immigration status was conditioned on his continued employment, he was terminated on March 2, 2026, and the 60-day grace period for his H-1B visa following his involuntary termination has since expired. (D.I. 9 at 8) "[A] showing of past harm, without more, is insufficient to justify the issuance of a preliminary injunction." *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 530 (E.D. Pa. 2018); *see also Doe v. Del. State Univ. Bd. of Trustees*, C.A. No. 20-1559-MN, 2021 WL 2036670, at *3 (D. Del. May 21, 2021) ("Plaintiff cannot rely on past harms to sustain his burden.").

Plaintiff's mental health diagnosis fails to support his position that he will be irreparably harmed absent reinstatement to his former position. Plaintiff represents that he was diagnosed with clinical depression and anxiety in January of 2026, two months before he was terminated. (D.I. 9 at 7) He alleges that he was unable to seek treatment "for several months beyond the onset of symptoms because he could not afford the cost of care," which he characterizes as "a direct and proximately caused consequence of the wrongful termination." (*Id.*) By Plaintiff's own admission, he was employed and covered by health insurance at the time his symptoms began. In any event, it is unclear how reinstatement would improve Plaintiff's mental health conditions when he directly attributes the deterioration of his mental health to his work environment. Because Plaintiff has failed to satisfy the irreparable harm requirement, I recommend that the court DENY Plaintiff's motion for a preliminary injunction.

The court further observes that Rule 65(c) states "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[A]bsent circumstances where there is no risk of monetary

16

loss to the defendant, the failure of a district court to require a successful applicant to post a bond constitutes reversible error." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988). Here, Plaintiff seeks either reinstatement or monetary relief worth tens of thousands of dollars, but he has not proposed any bond amount. Plaintiff's status as a *pro se* litigant proceeding *in forma pauperis* raises "some concern that setting a bond amount untethered to any economic risk to Defendants occasioned by the awarding of a preliminary injunction will be nothing less than a Pyrrhic victory for Plaintiff[.]" *Richardson v. Cascade Skating Rink*, 2022 WL 833319, at *7 (D.N.J. Mar. 21, 2022).

## IV.   CONCLUSION

For the reasons discussed above, I recommend that the court issue an Order in the form set forth below:

## ORDER

At Wilmington this __th day of _____, 2026, IT IS ORDERED that:

1.   The Report and Recommendation issued on August __, 2026 is **ADOPTED**.

2.   A service order shall issue with respect to Plaintiff's claim for employment discrimination under Title VII against Tech Mahindra.

3.   Plaintiff's retaliation claims against Tech Mahindra are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4.   All other claims in the amended complaint are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

5.   Plaintiff's motion for a preliminary injunction is **DENIED**. (D.I. 9)

6.   Plaintiff's motion to expedite the issuance of a service order is **TERMINATED AS MOOT**. (D.I. 12)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) double-spaced pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 4, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE